Sandra Lou SOUTHERLAND et al., Plaintiffs,

v.

Frank IRONS et al., Defendants,

Richard L. Wolk, Appellant,

Michigan Department of Social Services, Appellee.

No. 78–1147.

United States Court of Appeals, Sixth Circuit.

Argued April 15, 1980.

Decided Aug. 29, 1980.

Jacob K. Stein, Paxton & Seasongood, Donald J. Mooney, Jr., Cincinnati, Ohio, for appellant.

Frank J. Kelley, Atty. Gen., Robert N. Rosenberg, Asst. Atty. Gen., Robert A. Derengoski, Sol. Gen., Janis Meija, Asst. Atty. Gen., Lansing, Mich., for appellee.

Before KEITH and MERRITT, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PER CURIAM.

Attorney Richard L. Wolk appeals from the finding by District Judge Robert E. DeMascio that Wolk perpetrated a fraud on the court. Reference is made to the published opinion of the district court for a comprehensive statement of the facts. *Southerland v. County of Oakland*, 77 F.R.D. 727 (E.D.Mich.1978). We affirm.

Wolk filed the underlying civil rights action in 1973 on behalf of the plaintiff, Sandra Lou Southerland. Mrs. Southerland's cause of action arose from a confrontation between her husband and Oakland County, Michigan, Sheriff's Deputies which left her husband permanently incapacitated and hospitalized. Wolk undertook the case for a 50 percent contingent fee.

While the case was awaiting trial, most of Mr. Southerland's medical expenses were paid by appellee Michigan Department of Social Services (MDSS) through the state Medicaid program. Although designed for indigent persons, M.C.L. § 400.105, potentially solvent individuals may receive Medicaid assistance until they become solvent. M.C.L. § 400.107. In such cases, however, MDSS is subrogated to the recipient's right of recovery to the extent of funds expended for the recipient's medical care. M.C.L. § 400.106(2)(b). Therefore, MDSS became subrogated to Mrs. Southerland's right of recovery against the defendants to the extent of some $30,000 it had paid toward her husband's care.

MDSS notified appellant Wolk of its claim. Believing Wolk had agreed to rep-

resent its interest, MDSS elected not to intervene in the suit. This proved to be a mistake.

The case came on for trial before Judge DeMascio and a jury in August of 1974. On the second day of trial, however, one of the jurors announced that, due to the nature and extent of Mr. Southerland's injuries, she no longer could serve fairly as a juror on the case. On the defendants' motion, Judge DeMascio declared a mistrial.

Immediately thereafter, the parties conducted in-chambers settlement negotiations that culminated in a $500,000 settlement agreement. The parties returned to the courtroom and read the settlement's terms into the record. Judge DeMascio raised the question of the MDSS lien and the plaintiff's litigation expenses. Attorney Wolk responded that he would pay both from his 50 percent contingent fee, and assured the court Mrs. Southerland would net $250,000 from the settlement. Accordingly, the court approved the settlement, but left allocation of damages to the parties. As finally entered, the settlement agreement allocated $15,000 to each of Mrs. Southerland's two children, $1000 to Mr. Southerland, whom the parties erroneously supposed would continue to be eligible for Medicaid assistance, and the balance to Mrs. Southerland individually.

On October 21, 1976, MDS filed what it styled a Rule 60(b) motion for relief from judgment on the ground judicial approval of the settlement agreement had been procured by fraud. Specifically, MDSS alleged Wolk had not performed and had never intended to perform his promise to the court to pay the MDSS lien. Wolk responded that MDSS had no standing as a nonparty to raise the issue and denied he had committed any fraud.

In November of 1976, Judge DeMascio heard arguments on the standing issue and set December 13, 1976 for evidentiary hearings on the allegations of fraud. On December 2, however, Wolk filed a motion to disqualify Judge DeMascio. On April 8, 1977, Judge DeMascio filed his memorandum opinion setting forth his reasons for declining to disqualify himself and holding MDSS had standing to raise the fraud issue. Evidentiary hearings thus were delayed until April 25 and 26 and June 6, 1977.

At the evidentiary hearing, Judge DeMascio heard conflicting testimony as to the events following the entry of judgment on the settlement agreement. MDSS presented evidence that Wolk had procured the exclusion of MDSS from the list of payees on the settlement check. Further, while Wolk originally had represented to the court that Medicaid benefits made it unnecessary to allocate more than $1000 of the settlement to Mr. Southerland, he later had attempted to persuade MDSS the court had approved this figure as the maximum MDSS could recover on its lien. Even the $1000 Wolk was prepared to offer had been allocated from Mrs. Southerland's half of the settlement proceeds, not the one-half claimed by Wolk. Finally, Mrs. Southerland testified she had paid a $225 expert witness fee, $1200 in court costs, and all her husband's medical expenses since the time of trial.

Wolk testified the defendants' attorney had suggested the $1000 allocation as a means of settling with MDSS, and Wolk had attempted in good faith but without success to settle with MDSS. Wolk said he still was prepared to pay any part of the MDSS claim that exceeded $1000; however, Mrs. Southerland had several possible defenses to the claim which Wolk would assert if MDSS sued. He admitted he had billed Mrs. Southerland for half the court costs, but argued this was permissible under the settlement terms. The expert witness had billed Mrs. Southerland directly without his knowledge. Wolk also admitted he had not been aware until after the trial that Mrs. Southerland's recovery would render her husband ineligible for further Medicaid assistance.

On January 31, 1978, Judge DeMascio filed his opinion, reported at 77 F.R.D. 727 (E.D.Mich.1978), finding Wolk had committed fraud on the court, reallocating the settlement proceeds, reducing Wolk's fee to one-third and requiring him to pay all costs and fees of the fraud proceedings.

Wolk has raised a variety of issues on appeal, none of which has any merit. Initially, Wolk presents two procedural objections to the actions of the district court: First, MDSS as a non-party, had no standing to file a Rule 60(b) motion for relief from judgment. Second, the court erred by allowing MDSS to intervene after the close of the trial for the purpose of filing its Rule 60(b) motion. The short answer to both these contentions is that MDSS did not intervene and did not need to intervene in order to raise the issue of fraud on the court. Rule 60(b) by its own terms does not limit the court's power to set aside a judgment induced by fraud. Furthermore, a claim of fraud on the court may be raised by a non-party. *See Root Refining Co. v. Universal Oil Products Co.*, 169 F.2d 514, 522–25 (3d Cir. 1948), *cert. denied*, 335 U.S. 912, 69 S.Ct. 481, 93 L.Ed. 444 (1949); *United States v. International Telephone & Tel. Corp.*, 349 F.Supp. 22, 28 (D.Conn.1972), *affd. mem.*, 410 U.S. 919, 93 S.Ct. 1363, 35 L.Ed.2d 582 (1973).

Wolk next argues Judge DeMascio erred in failing to disqualify himself pursuant to 28 U.S.C. §§ 144 and 455(a). Judge DeMascio correctly determined Wolk's allegations of bias all concerned judicial actions in the present and past cases in which Wolk had appeared. It is well settled that actions of a judge in pending or previous litigation in which the movant has been involved are not grounds for disqualification under § 144. *Sexton v. Kennedy*, 519 F.2d 797 (6th Cir. 1975); *Knoll v. Socony Mobil Oil Company, Inc.*, 369 F.2d 425, 430 (10th Cir. 1966), *cert. denied*, 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 138 (1967); *Barnes v. United States*, 241 F.2d 252 (9th Cir. 1956). We find Judge DeMascio's actions did not create the appearance of bias, prejudice or impropriety so as to require recusal under 28 U.S.C. § 455(a). The motion to disqualify was properly denied.

This brings us to Wolk's central issue, whether there was in fact fraud on the court. As previously stated, Judge DeMascio heard conflicting testimony regarding Wolk's actions and chose not to believe Wolk's version of the facts. On the record before us we cannot say the findings of fact of Judge DeMascio are clearly erroneous. Fed.R.Civ.P. 52(a).

For the reasons stated in the opinion of Judge DeMascio of April 8, 1977 and his opinion reported at 77 F.R.D. 727, the judgment of the district court is affirmed. No costs are taxed. The parties will bear their own costs on this appeal.